IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**LOLITA YVETTE SUGGS,**
**Individually,**

      **Plaintiff,**

**v.**                                  **No.**

**GUEST HOUSE AT GRACELAND LLC,**
**A Delaware Limited Liability Company, d/b/a**    **JURY DEMANDED**
**The Guest House at Graceland, LLC and d/b/a**
**Elvis Presley Enterprises; ELVIS PRESLEY**
**ENTERPRISES 1 INC., A Tennessee For-Profit-**
**Corporation d/b/a Elvis Presley Enterprises;**
**ELVIS PRESLEY ENTERPRISES, LLC, A Delaware**
**Limited Liability Company d/b/a Elvis Presley**
**Enterprises; and GRACELAND HOLDINGS LLC,**
**d/b/a Graceland Holdings, LLC, A Delaware**
**Limited Liability Company,**

      **Defendants.**

---

## COMPLAINT

---

Comes now Plaintiff Lolita Yvette Suggs and files this Complaint against Defendants GUEST HOUSE AT GRACELAND LLC d/b/a The Guest House at Graceland, LLC and further d/b/a Elvis Presley Enterprises, ELVIS PRESLEY ENTERPRISES 1 INC. d/b/a Elvis Presley Enterprises, ELVIS PRESLEY ENTERPRISES, LLC d/b/a Elvis Presley Enterprises and GRACELAND HOLDINGS LLC d/b/a Graceland Holdings, LLC (also collectively referenced as "Defendants"). In support of Plaintiff's Complaint, Plaintiff states as follows:

## SUMMARY

1.      As more specifically stated below, Plaintiff alleges that she has been the victim of race discrimination based on her race of African-American or black in violation of, and that she

engaged in protected activity and was the victim of retaliation under, 42 U.S.C. § 1981,  Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq.  ("THRA"). Plaintiff further alleges that she is a qualified person with a disability under the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. and that she sought a reasonable accommodation (occasionally sitting down for a few minutes), and was denied the interactive process and the requested accommodation. Plaintiff further alleges that she is an eligible  employee under the Family and Medical Leave Act, 29 U.S.C. 2601 et seq., that she sought and was approved for intermittent leave. Plaintiff alleges that she was discriminated against because of her disability and for seeking and obtaining an accommodation and that she was retaliated against for seeking and obtaining approval for and occasional use of her intermittent leave, all of which damaged her.

## **JURISDICTION**

2.      This action is brought pursuant to 42 U.S.C. § 1981, Title VII, the ADA and the FMLA for injunctive relief and damages. This Court has original jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) (Title VII), 42 U.S.C. § 12117 (which incorporates 42 U.S.C. § 2000e-5 for jurisdiction for the ADA claim), 29 U.S.C. § 2617 (FMLA) and 28 U.S.C. § 1331 (for 42 U.S.C. § 1981). Plaintiff also asserts a claim under the THRA, and this Court has supplemental jurisdiction over the THRA claim pursuant to 28 U.S.C. § 1367 as that claim is so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## **VENUE**

3.      Venue is appropriate in this District pursuant to 42 U.S.C. 2000e-5(f)(3) and 28 U.S.C. 1391 (b)(1)-(2) in that the events that are the basis for Plaintiff's claim occurred in this District.

**PARTIES**

4.      Plaintiff Lolita Yvette Suggs is a resident citizen of the State of Tennessee and at all times relevant to this case has resided in and continues to reside in Shelby County, Tennessee.

5.      Defendant GUEST HOUSE AT GRACELAND LLC d/b/a The Guest House at Graceland, LLC and further d/b/a Elvis Presley Enterprises is a foreign limited liability company created under the laws of the State of Delaware. In its filing with the Tennessee Secretary of State, Defendant GUEST HOUSE AT GRACELAND LLC lists its principal office address and mailing address as 3734 Elvis Presley Blvd, Memphis, Tennessee 38116-4106. In its filing with the Tennessee Secretary of State, Defendant GUEST HOUSE AT GRACELAND LLC states that it may be served with process via its registered agent for service of process in the State of Tennessee, William Ross Bradley, 6000 Poplar Avenue Suite 400, Memphis, Tennessee 38119.

6.      Defendant ELVIS PRESLEY ENTERPRISES 1 INC. d/b/a Elvis Presley Enterprises is a for-profit corporation organized under the laws of the State of Tennessee.  It was formerly known as ELVIS PRESLEY ENTERPRISES, INC.  In its filing with the Tennessee Secretary of State,  Defendant ELVIS PRESLEY ENTERPRISES 1 INC. lists its principal office address and mailing address as 3734 Elvis Presley Blvd, Memphis, Tennessee 38116-4106. In its filing with the Tennessee Secretary of State, Defendant ELVIS PRESLEY ENTERPRISES 1 INC. states that it may be served with process via its registered agent for service of process in the State of Tennessee, William Ross Bradley, 6000 Poplar Avenue Suite 400, Memphis, Tennessee 38119.

7.     Defendant ELVIS PRESLEY ENTERPRISES, LLC d/b/a Elvis Presley Enterprises is a foreign limited liability company created under the laws of the State of Delaware. In its filing with the Tennessee Secretary of State,  Defendant ELVIS PRESLEY ENTERPRISES, LLC states that it may be served with process via its registered agent for service of process in the State of Tennessee, Corporation Service Company, 2908 Poston Ave., Nashville, Tennessee 37203-1312.

8.     Defendant GRACELAND HOLDINGS LLC d/b/a Graceland Holdings, LLC is a Delaware limited liability company which has provided and provides Plaintiff's benefits during Plaintiff's employment. Defendant GRACELAND HOLDINGS LLC may be served with process via its registered agent for service of process in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## FACTS

9.     Defendants function as an integrated enterprise with integrated management, operations, human resources and labor relations, financial functions and ownership. In terms of Plaintiff's employment with Defendants, there is no distinction between the Defendants, as all are an employer of Plaintiff.  The name The Guest House at Graceland, LLC appears on Plaintiff's pay stubs. This same name along with the name Elvis Presley Enterprises appears on the Banquet Event Order forms for the events Plaintiff works.  The name Elvis Presley Enterprises appears as the name of the "employer" of Plaintiff on the FMLA forms provided to Plaintiff for her FMLA leave request, notice of rights and approval. Plaintiff's benefits, or a portion of them, are provided by the entity referenced as Graceland Holdings, LLC as shown by the paperwork provided to Plaintiff in connection with her employment.  The employee handbook provided to Plaintiff states

that it is "[t]he [e]mployee [h]andbook [f]or [a]ll [e]mployees of Elvis Presley Enterprises, Inc. and its [a]ffiliates."

10.    At all times relevant to this case Defendant GUEST HOUSE AT GRACELAND LLC has been an entity engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or proceeding calendar year. In fact the  charge of discrimination drafted by the U.S. Equal Employment Opportunity Commission ("EEOC") represents that Defendant individually, or Defendants jointly and collectively, had between 100 to 150 employees. Defendants are thus each employers or are jointly or combined as a single employer Plaintiff's actual "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and the Americans with Disabilities Act, 42 U.S.C. 12111(5).

11.    Defendant GUEST HOUSE AT GRACELAND LLC at all relevant times was engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day for each of 20 or more calendar workweeks in the current calendar year. Further all the Defendants constitute Plaintiff's employer within the meaning of the Family and Medical Leave Act, such that Defendant and Defendants jointly or collectively as a single employer, constitute an employer of Plaintiff within the meaning of the Family and Medical Leave Act in that Defendants are engaged in commerce or in a industry or activity affecting commerce and have employed 50 or more employees for each working day for each of 20 or more calendar workweeks in the current or preceding calendar year.

12.    Plaintiff was hired by Defendants on September 22, 2016 to work as a server for Defendants' events in Memphis, Tennessee. Plaintiff was hired as a full-time employee and worked a full workweek of approximately 35- 40 or more hours for years of her employment.

13.     Plaintiff worked in this job and participated in the tip pool for the Defendants' events for years of her employment.

14.     Plaintiff also is a licensed bartender. Plaintiff began providing bartending services in connection with Plaintiff's employment with Defendants. In that status Plaintiff also participated in the tip pools for the events.

15.     Plaintiff worked full time as a bartender and a server as well for years. Plaintiff actually obtained recognition in Memphis as the top bartender in the city for 2023. In all this timeframe, Plaintiff worked full time and participated in the tip pools of the events where she worked.

16.     In this timeframe, Plaintiff's annual wages, tips and other compensation per her W-2's from this employment were approximately $44,600 for 2021 and $ 46,500 for 2022 and $47,000 for 2023.

17.     In the later part of 2023, Plaintiff had a new manager placed over Plaintiff named Nelson Taboada. Mr. Taboada was the Defendants' Banquet Manager, and in that capacity was the supervisor over Plaintiff.

18.     Mr. Taboada represented that he was Hispanic.

19.     Dennis Norton (white) was a manager over Mr. Taboada. The General Manager was named Scott (last name unknown).

20.     Defendants' Human Resources personnel in this timeframe were Ms. Teresa (last name unknown) and Ms. Michelle Lewis.

21.     Plaintiff has worked under Mr. Taboada's supervision and management from late 2023 until the present as Mr. Taboada just left.

22.    Mr. Taboada favored Hispanic employees in work assignments, work hours and discipline related matters. Mr. Taboada reduced Plaintiff's hours because of her race and then because of her protected activity in objecting to and then complaining about the unlawful treatment because of race.

23.    For instance, one employee named Sonya (last name unknown) (Hispanic) was given more hours than anyone and could not speak English very well, a requirement for being a server. Mr. Taboada favored her because of her race (Hispanic).  She was new and not well trained. Taboada favored her with more work and shifts than others.

24.    Plaintiff complained about treatment of Sonya getting more hours based on race. This complaint was made to Mr. Taboada and Human Resources (Teresa and Ms. Lewis) as well as to Dennis Norton and the GM, Scott.  Sonya would not even come in to work sometimes, and Mr. Taboada would cover for her missing work. Plaintiff and other African-Americans were not treated this way by Mr. Taboada.

25.    Taboda's response to this complaint was if you don't like what I am doing, go get another job and that he (Mr. Taboada) can place people where he wants.

26.    After this complaint, Mr. Taboada cut Plaintiff's hours and events for work and reduced her pay.

27.    In this same timeframe, Mr. Taboada fired numerous African-American employees.

28.    Mario (last name unknown) is a member of management for Defendants and is believed to be the Food and Beverage Director. In any event, his family owns a temporary service. That temp service provides a substantially Hispanic temporary work force.

29.    After Mr. Taboada arrived and began supervising Plaintiff and her co-workers, Mr. Taboada switched temp services to the one owned by Mario's family and began bringing in

Hispanic workers to the events. Approximately at the end of 2024 Taboada began using this staffing company to provide large numbers of Hispanic temporary employees.

30.     At events, Mr. Taboada would replace various of Defendants' employees, including Plaintiff, who were African-American servers, with Hispanic servers.  Mr. Taboada did this to Plaintiff. Mr. Taboada would simply send the African-American  servers home or take them off the clock and tell them to leave.  The Hispanic servers would be given the work instead. These decisions and assignments were based on race.

31.     Mr. Taboada would have the Hispanic temps also perform various light jobs while having African-American employees perform the heavier or more manual jobs. These assignments were based on race.

32.     Plaintiff observed what she reasonably believed to be racially discriminatory actions towards African-Americans who were employed as servers.

33.     Mr. Taboada, however, left no doubt as to his motivation because he verbalized what he was doing. Mr. Taboada made his intentions clear by repeatedly, regularly, in an ongoing manner from that time onward, verbalizing to the African-American staff, including Plaintiff, that Hispanic workers would work circles around African-American servers. Mr. Taboada would express often and in various ways his belief that Hispanic workers were superior to African-American workers.  These categorical racial statements (and the corresponding actions of Mr. Taboada) were highly offensive to Plaintiff as an African-American and would be to any reasonable person in Plaintiff's situation in this work environment.

34.     After observing these racial actions by Mr. Taboada and having to repeatedly hear his comments about Hispanic workers compared to African-American workers, including Plaintiff, at some point Plaintiff objected to the conduct and statements by Mr. Taboada. Plaintiff expressed

directly to Mr. Taboada that he should not replace the African-American staff with Hispanic staff based on the racially offensive stereotypes as Mr. Taboada had expressed. Mr. Taboada's response was that Plaintiff should leave and go find another job.

35.     Plaintiff also repeatedly complained to Dennis Norton (Mr. Tabado's manager), who did nothing but direct Plaintiff to HR (Ms. Michelle). Ms. Michelle asked Plaintiff to complain to the GM, Mr. Scott. Plaintiff then complained to the GM. The GM responded to Plaintiff's complaint to him that Plaintiff should stop complaining and that Plaintiff's "mind frame is off." HR then asked what the GM said and Plaintiff reported it. Nothing was done.

36.     Also since Plaintiff's complaint included a complaint about her reduced hours and pay, Defendants changed the disclosures showing Plaintiff's gratuity rate so Plaintiff could not tell and had difficulty figuring out what she was actually supposed to make per hour at events Plaintiff was working. Defendants just stopped making the disclosures of what Plaintiff should have made from gratuity. This was intended to and had the effect of preventing Plaintiff from calculating what she should have made. Taboada is believed to have done this with management's approval.

37.     Mr. Taboada did not take Plaintiff's objections or complaints very well.

38.     Mr. Taboada cut Plaintiff out of working for other departments for Defendants and thus reduced Plaintiff's ability to earn money. There was no legitimate reason for this as Plaintiff had worked in other departments for Defendants from 2017 onward to that time. This was just retaliation.

39.     Mr. Taboada also continued retaliating against Plaintiff by reducing Plaintiff's hours of work on the Banquet events.

40.     Mr. Taboada also assigned Plaintiff the least compensable work where there was no tip pool and thus greatly reduced Plaintiff's earnings.

41.     This conduct by Mr. Taboada greatly reduced Plaintiff's earnings and constituted a tangible employment loss, as these were not de minimis losses. Plaintiff's W-2 for 2024 shows wages, tips and other compensation of approximately $39,800 and then for 2025 Plaintiff's W-2 shows wages, tips and other compensation of approximately $29,700.

42.     These discriminatory and retaliatory actions by Defendants have imposed significant damages to Plaintiff in the amount of her earnings as shown above. Further, for some pay periods Plaintiff's work was so severely reduced by Mr. Taboada and Defendants that after paying for health insurance, Plaintiff had only $4.78 (July 21, 2025 to August 3, 2025) or $7.10 (July 7, 2025 to July 20, 2025) remaining.

43.     Mr. Taboada's conduct has continued throughout 2025. He also did not stop with the racially offensive stereotypes aimed at Plaintiff and other African-American employees.

44.     As this was occurring and to the present, Plaintiff has complained about this unlawful conduct to human resources, including to Teresa (last name unknown) and Michelle Lewis (human resources). Plaintiff has made multiple complaints to Defendants' management and Human Resources but nothing was done to address Plaintiff's concerns or to make Plaintiff whole. Plaintiff also still had to work in this hostile environment this entire timeframe.

45.     Management and human resources were simply not trained on what needed to be done in response to such complaints. When Plaintiff complained to HR, HR told Plaintiff to pray about it. Defendants simply did not implement acceptable policies prohibiting and addressing race discrimination and harassment, failure to accommodate, interference with FMLA leave and retaliation along with retaliatory harassment.

46.     As noted above, Plaintiff has also complained to other management about Mr. Taboada's unlawful racial and retaliatory actions. Specifically, Plaintiff has complained to Scott

(last name unknown) the General Manager and to Dennis Norton, the manager over Mr. Taboada. Plaintiff complained many times to Mr. Norton, but he did nothing so that the conduct did not stop. Mr. Norton just sent Plaintiff to HR, and HR also did nothing.

47.     The discriminatory and retaliatory comments and actions of Mr. Taboada continued uninterrupted through 2025, and a significant amount of these comments and actions continued into March 2026. Mr. Taboada has been hostile to Plaintiff and has tried to pressure Plaintiff to quit her job, and he has constantly criticized Plaintiff to Plaintiff's co-workers and management. This criticism is motivated by Mr. Taboada's racial animus and his retaliatory animus towards Plaintiff because Plaintiff has complained about Mr. Taboada and his racially discriminatory and offensive actions as well as his retaliatory actions.

48.     Mr. Taboada's treatment of Hispanic temp employees continued with the favorable jobs assignments, with replacing Plaintiff and some other African-American employees with Hispanic temps on events and with the racially offensive statements and comparisons of African-American employees to Hispanic employees.

49.     The African-American employees are required to park a distance from work. However, Mr. Taboada allows the Hispanic temp employees to park right in front of the facility. Plaintiff asked about this disparate treatment and asked if she could park closer to work because of Plaintiff's physical condition (as explained below). Plaintiff also had difficulty walking through the traffic because of Plaintiff's condition.  Mr. Taboada refused to allow Plaintiff to park there.

50.     It is simply unlawful to apportion terms and conditions of employment based on race.

51.     Plaintiff has repeatedly objected directly to Mr. Taboada about his retaliatory treatment of Plaintiff following Plaintiff's objections to the racially discriminatory conduct, and

Mr. Taboada has repeatedly responded that Plaintiff should just quit her employment with Defendants.  Mr. Taboada often responded that if Plaintiff does not like how Mr. Taboada manages the banquet department (whether in his treatment of Plaintiff or others) Plaintiff should leave and get another job. These statements and the corresponding retaliatory conduct by Mr. Taboada have been disseminated throughout the workplace and were reported to management and human resources by Plaintiff.

52.     These statements were actually made in the presence of many employees and management including Amanda (assistant manager), Candice (a captain), Mr. Ron (Bartender), and Kenitha (Bartender).

53.     This conduct and these statements by Mr. Taboada have been reported by Plaintiff on multiple occasions to Defendants' human resources, but nothing has been done about it.

54.     The African-American employees have been scared of Mr. Taboada and have been afraid to speak up because they don't want to be the victims of retaliation. The African-American employees, and everyone else, observed that Plaintiff spoke up and that Plaintiff was retaliated against by having her hours and pay drastically reduced in retaliation for speaking up against race discrimination and because of Plaintiff's own race.

55.     This racial conduct and the retaliation visited on Plaintiff has caused significant stress and emotional pain and suffering to Plaintiff in that Plaintiff's pay has been greatly reduced, and Mr. Taboada with Defendants' full knowledge has tried to force Plaintiff to quit by making the work environment intolerable (based on race and retaliation) and by reducing Plaintiff's income so drastically that Plaintiff would have to quit. .

56.    While this was going on, in or about October 2024, Plaintiff sought as an accommodation that she could occasionally, if needed, sit down a few minutes during a work day rather than remain on her feet her entire shift.

57.    Plaintiff suffers from rheumatoid arthritis and sciatic nerve damage. At all relevant times, Defendants have been aware of Plaintiff's physical condition. This condition does substantially limit Plaintiff in the major life activities of standing and walking.

58.    Plaintiff is, however, a qualified person with a disability who is able with or without reasonable accommodation to perform the essential functions of her job.

59.    In connection with that request, also in October of 2024, Plaintiff requested intermittent leave under the Family and Medical Leave Act (FMLA) for occasional flare-ups of her condition. Plaintiff filled out the FMLA paperwork from Defendants, and Plaintiff's doctor submitted information that on occasion Plaintiff may need to call out based on her condition and that Plaintiff may need to down 5 minutes on occasion during her workday.

60.    What Plaintiff requested is a form of intermittent leave. Defendants did approve Plaintiff for intermittent leave.

61.    Plaintiff is an eligible employee under the FMLA in that she worked at least 1250 hours in the prior 12 months and there were and are at least 50 employees within 75 miles of Plaintiff's work location.

62.    Plaintiff has not used her intermittent leave very frequently. Instead, Defendant has significantly reduced her hours of work.

63.    Plaintiff has sought on occasion for permission to sit down for just a few minutes during her work day.

64.     There are also duties within the scope of the job Plaintiff does that are performed sitting down, so that Plaintiff can still work even when sitting down for a few minutes if needed on any given day.   Plaintiff did this for years before Mr. Taboada. Allowing such an accommodation is not an undue hardship or burden to Defendants.

65.     Once Mr. Taboada learned of Plaintiff's exercise of her rights under the ADA and the FMLA, Mr. Taboada has denied Plaintiff the requested accommodation (or any similar accommodation).

66.     There has been no meaningful interactive process for Plaintiff's requested accommodation.

67.     On one occasion, Plaintiff had crates to sit on if needed during her shift. While Plaintiff was working, Mr. Taboada came and took Plaintiff's crates away and made the statement to others that Plaintiff will not be able to sit down during her work.

68.     Mr. Taboada has made sure that the sitting down work was done by others. He favors giving that work to Hispanic temps. Mr. Taboada has not been willing to allow Plaintiff to sit down while working.

69.     This conduct by Defendants violated the ADA.

70.     Mr. Taboada has also cut Plaintiff's hours of work further and replaced Plaintiff with others.   Mr. Taboada has further removed Plaintiff from sharing in the tip pools and has assigned Plaintiff this less favorable type of work to reduce Plaintiff's earnings. Mr. Taboada has retaliated against Plaintiff for seeking an accommodation and for asking for and obtaining intermittent FMLA leave, which Plaintiff has seldom used.

71.     Mr. Taboada has also interfered with Plaintiff's FMLA rights and retaliated against Plaintiff for exercising her FMLA rights.   He has interfered with Plaintiff's leave rights and has

retaliated against Plaintiff for opposing his unlawful interference and retaliation by not assigning Plaintiff work at all or by greatly reducing Plaintiff's assignments. Plaintiff has objected to all this both to Mr. Taboada, to Human Resources and to Defendants' Management.

72.    Mr. Taboada has steadily increased his efforts to force Plaintiff to quit her job.

73.    Mr. Toboada has shown his hostility towards Plaintiff by refusing to tell Plaintiff when events were being scheduled to occur in the future and to which events Plaintiff would be assigned - so that Plaintiff could plan her work schedule and her visits to her healthcare provider for her medical treatment. Mr. Taboada did this even though as the Banquet Manager Mr. Taboada had access to this information. Mr. Taboada did this to interfere with Plaintiff's visits to a doctor and treatment for healthcare. The reduction in pay which was drastic also interfered with Plaintiff's ability to pay for her healthcare visits and treatment.

74.    When Plaintiff has complained of the actions of Mr. Taboada as outlined above, Mr. Taboada has repeatedly told Plaintiff to go find another job if she does not like what he is doing. Mr. Taboada's reduction of Plaintiff's hours and pay are so significant that for some weeks Plaintiff has performed very little work. This is an attempt to force Plaintiff to quit her job by reducing Plaintiff's hours to almost nothing in some weeks.

75.    Plaintiff has objected to this conduct both to Mr. Taboada and to Defendants' human resources and to other management. Defendants' human resources and management failed to address this unlawful conduct or to make Plaintiff whole.

76.    On December 12, 2025, Plaintiff filed her charge of discrimination with the U.S. Equal Employment Opportunity Commission alleging disability, race and retaliation. A copy of the charge is attached as **Exhibit A** hereto.

77.    The EEOC issued its Determination and Notice of Rights on December 18, 2025. A copy is attached as **Exhibit B** and is incorporated herein by reference. Plaintiff did not request the EEOC's Notice of Rights. Rather, the EEOC decided on its own to issue it.

78.    Plaintiff has timely filed this lawsuit following her receipt of the EEOC's Determination and Notice of Rights (Exhibit B).

79.    Plaintiff has suffered significant damages as a result of Defendant's unlawful actions, including pecuniary losses, loss of pay, loss of benefits or ability to utilize benefits, anxiety, distress, humiliation, embarrassment, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, injury and damage.

80.    Defendant is liable to Plaintiff for declaratory relief, injunctive relief, compensatory damages, liquidated damages, punitive damages and equitable relief, including back pay and benefits.

81.    Defendant's actions were taken willfully, intentionally, with malice and/or in reckless indifference and disregard of Plaintiff's protected rights under Title VII, the ADA, the FMLA and 42 U.S.C. § 1981, as well as Plaintiff's rights under the THRA.

### Count I: Title VII Claim Based on Charge No. 490-2025-03340

82.    Paragraphs 1 to 81 are incorporated by reference.

83.    As pleaded above, Defendants are employers within the coverage of Title VII of the Civil Rights Act of 1964.

84.    As pleaded above, Plaintiff is an employee of Defendants within the coverage of Title VII.

85.    Defendants' conduct constitutes race discrimination in violation of Title VII and further constitutes retaliation for complaining about race discrimination.

86.    Title VII provides:

It shall be an unlawful employment practice for an employer—

**(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

**(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. 2000e-2(a)(1)-(2).

87.    Defendants' conduct as alleged above constitutes race discrimination which caused damages to Plaintiff.

88.    Pleading in the alternative, Plaintiff's race was at least a motivating factor in Defendants' conduct in violation of 42 U.S.C. § 2000e-2(m) and caused damage to Plaintiff. Further, Defendant would not have taken the same action in the absence of the impermissible and illegal motivating factor of Plaintiff's race.

89.    Defendants' conduct also violates the opposition clause of Title VII, which prohibits retaliation:

**(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.** It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment … *because he has opposed any practice made an unlawful employment practice by this title*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3 (emphasis added).

90.    Defendants' management knew of Plaintiff's protected activity in complaining about and opposing race discrimination and retaliated against Plaintiff for her protected activity by reducing her work hours and events, giving Plaintiff less favorable working conditions and terms, removing Plaintiff from participation in the tip pool and in harassing Plaintiff. This conduct by Defendants is of a type that would dissuade a reasonable person from asserting their rights under Title VII and in opposing race discrimination.

91.    As pleaded above, Defendant's retaliation caused damage to Plaintiff.

92.    Plaintiff was also the victim of a racially hostile work environment and a hostile retaliatory work environment as well.

93.    As pleaded above, the racial harassment and retaliatory harassment came from management. Defendants via management and human resources were fully aware of the racial harassment and retaliatory harassment and allowed it to continue. Defendants ignored Plaintiff's complaints and did not stop the unlawful harassment, both racial and retaliatory. The racial and retaliatory harassment were both severe and/or pervasive and were based on Plaintiff's race (African-American or black) and/or protected activity under Title VII in opposing racial discrimination and then also in opposing unlawful retaliation.

94.    As pleaded above, Plaintiff subjectively did find, and a reasonable person as well would have found, the race harassment and retaliatory harassment to be severe and/or pervasive and offensive.

95.    As pleaded above, Defendants' unlawful harassment (racial and retaliatory) was such that Plaintiff's submission to or rejection of such harassment constituted a term and condition of Plaintiff's employment, Plaintiff's submission to or rejection of such conduct was used as the basis for employment decisions affecting Plaintiff and/or such conduct had the purpose or effect

18

of unreasonably interfering with Plaintiff's work performance or creating an intimidating, hostile, or offensive working environment.

96.    As pleaded above, Defendants failed to take reasonable steps to prevent the conduct or to address it after Defendants knew of it or should reasonably have known of it.

97.    Plaintiff also did not fail to take advantage of any preventive or corrective opportunities or otherwise to avoid the harm. Plaintiff did all she knew to do to oppose, report and complain about racial and retaliatory harassment.

98.    Plaintiff also suffered tangible employment actions and losses in the drastic reduction in her pay based on her opposition to race discrimination and retaliation.

99.    As pleaded above, Defendants' conduct in violation of Title VII has caused actual damage to Plaintiff.

100.    Based on Defendants' conduct, Defendants are also liable for punitive damages.

101.    For all of Defendants' Title VII violations, both race discrimination and retaliation, pursuant to 42 U.S.C. §  2000e-5(g)(1) and (k), 42 U.S.C.§ 1981a(a)(1) and (b), Plaintiff has a claim against Defendants for, and Defendants are liable to Plaintiff for, backpay and lost wages and compensation, compensatory damages, including for pecuniary losses, loss of benefits, anxiety, distress, humiliation, embarrassment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment  of life, and other non-pecuniary losses, injury and damage, punitive damages, equitable relief, injunctive relief, prejudgment interest, attorney's fees, expenses, costs and such other damages and relief as the jury determines to be appropriate.

### Count II: 42 U.S.C. §1981 Claim for Race Discrimination and Retaliation

102.    Paragraphs 1 to 101 are incorporated by reference.

103.    As set out and pleaded above, Defendants' conduct constitutes race discrimination in violation of 42 U.S.C. § 1981. Defendant discriminated against Plaintiff based on her race (African-American and Black).

104.    As also set out and pleaded above, Defendant's conduct also constitutes retaliation for Plaintiff's complaints and objections to race discrimination.

105.    Plaintiff also suffered racial harassment as set out above in violation of section 1981.

106.    Plaintiff further suffered retaliatory harassment for complaining about and opposing racial harassment and retaliatory harassment in violation of section 1981.

107.    Defendants' conduct caused damage to Plaintiff. Plaintiff suffered tangible employment losses and materially adverse actions because of such conduct.

108.    Based on Defendants' conduct, Defendant is also liable for punitive damages under section 1981.

109.    Defendants are liable to Plaintiff for backpay and lost wages and compensation, compensatory damages, including for humiliation, embarrassment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, other non-pecuniary losses, pecuniary losses, loss of benefits, other injury and damages, punitive damages, equitable relief, injunctive relief, prejudgment interest, attorney's fees, expenses, costs and other damages and relief as the jury determines to be appropriate.

## Count III: Violation of the Tennessee Human Rights Act

110.    Paragraphs 1 to 109 are incorporated by reference.

111.    As alleged above, Defendants' conduct also violates the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq, including Tenn. Code Ann. § 4-21-301 and § 4-21-401,

in that Defendant discriminated against Plaintiff on the basis of race and retaliated against Plaintiff for opposing and/or complaining about such unlawful conduct and for opposing Defendants' retaliation.

112.    As set out and pleaded above, Defendant discriminated against Plaintiff based on her race (African-American, Black). Defendant's conduct also constitutes retaliation for complaining about race discrimination.

113.    As pleaded above, Plaintiff also suffered racial harassment and retaliatory harassment in violation of the Tennessee Human Rights Act.

114.    Plaintiff suffered materially adverse actions and tangible employment losses, including the drastic reduction in her work hours and pay as a result of such unlawful conduct.

115.    Plaintiff was also damaged by Defendant's actions and suffered humiliation and embarrassment and emotional pain and suffering from  such unlawful conduct.

116.    Defendant is liable to Plaintiff for backpay and lost wages and compensation, compensatory damages, including for injury from humiliation, embarrassment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, pecuniary losses, loss of benefits, and additional equitable relief, prejudgment interest, attorney's fees, expenses, costs, and such other relief, legal or equitable, as provided by Tennessee law and to which Plaintiff is determined to be entitled at the trial of this matter before a jury.

## Count IV: Violation of the Americans with Disabilities Act

117.    Paragraphs 1 to 116 are incorporated by reference.

118.    Defendants are an employer within the coverage of the Americans with Disabilities Act. 42 U.S.C. § 12111(5).

21

119.    Plaintiff is an employee of Defendants within the coverage of the Americans with Disabilities Act. 42 U.S.C. § 12111(4).

120.    Plaintiff is a qualified individual with a disability in that Plaintiff has a disability and a history of a disability or was regarded as having a disability by Defendants. Plaintiff is also able to perform the essential functions of her job with or without a reasonable accommodation.

121.    Plaintiff sought an accommodation by asking to be allowed to sit down occasionally as needed in her work based on Plaintiff's physical condition as pleaded above.

122.    Plaintiff's job actually included duties that were performed sitting down.

123.    Defendants did not provide Plaintiff with a reasonable accommodation. Defendants failed to provide the interactive process and simply ignored their obligations under the ADA.

124.    Instead, Defendants sought to keep Plaintiff from even sitting down to do her duties that allowed her to be seated when performing them.

125.    There was no undue hardship to Defendants in allowing what Plaintiff requested.

126.    Defendants' conduct violated the ADA in that Defendants failed to provide a reasonable accommodation and even failed to engage in the interactive process required to seek to find a reasonable accommodation.

127.    Instead, pleading in the alternative, Defendants cut Plaintiff's hours of work and pay significantly and thus discriminated against Plaintiff for asking for a reasonable accommodation.

128.    Defendants' conduct violates the Americans with Disabilities Act. 42 U.S.C. § 12112(a)-(b).

129.    Defendants are liable to Plaintiff for compensatory damages, including for injury from humiliation, embarrassment, emotional pain, suffering, inconvenience, mental anguish, loss

of enjoyment of life and other non-pecuniary losses, pecuniary losses, loss of benefits, and additional equitable relief, including backpay and loss of wages and compensation, prejudgment interest, attorney's fees, expenses, costs, and such other relief, legal or equitable, as provided by the Americans with Disabilities Act and federal law and to which Plaintiff is determined to be entitled at the trial of this matter before a jury.

### Count V: Violation of the Family and Medical Leave Act

130.    Paragraphs 1 to 129 are incorporated by reference.

131.    Pursuant to 29 U.S.C. § 2611(3) and (4)(A), Defendants are an employer or employers of Plaintiff within the coverage of the FMLA.

132.    Pursuant to 29 U.S.C. § 2611(2)(A)-(C), Plaintiff at all times relevant to this case has been and remains an eligible employee under the FMLA.

133.    Plaintiff requested FMLA intermittent leave, which Defendants' acknowledged was Plaintiff's legal right and which was approved.

134.    Pleading in the alternative, Defendants through management and human resources have cut Plaintiff's work hours drastically such that they have interfered with Plaintiff's ability to take FMLA leave intermittently and have retaliated against Plaintiff for asserting her rights also by drastically reducing Plaintiff's work hours and assigning Plaintiff work that deprived Plaintiff of participation in the tip pools for events and greatly reduced Plaintiff's earnings.

135.    Pleading in the alternative, Plaintiff has objected to this unlawful conduct and this has resulted in further retaliation in cutting Plaintiff's hours, giving Plaintiff assignments with no tip pool and reducing Plaintiff's pay.

136.    Defendants' conduct is in violation of 29 U.S.C. § 2615.

137.    This conduct has damaged Plaintiff.

23

138. Pursuant to 29 U.S.C. § 2617, Defendants are liable to Plaintiff for her damages under the FMLA, including wages, compensation, employment benefits, interest, liquidated damages, equitable relief, attorney's fees and costs.

WHEREFORE, Plaintiff prays for the following relief:

1. That a jury be empaneled to hear and try all issues triable by a jury and render a verdict in this case:

2. That Plaintiff be awarded a judgment that Defendant's actions towards Plaintiff have violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, the ADA, the FMLA and the THRA;

3. That Plaintiff be awarded a judgment finding for Plaintiff on her claims;

4. That Plaintiff be awarded back pay damages for her lost wages and compensation;

5. That Plaintiff be awarded the value of her lost benefits including any lost retirement benefits and medical benefits as well as any resulting loss from not having such benefits;

6. That Plaintiff be awarded liquidated damages under the FMLA;

7. That Plaintiff be awarded compensatory damages, including for humiliation, embarrassment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, other non-pecuniary losses and other injury, pecuniary damages and other damages, in the amount of $1,000,000 or such other amount as the jury deems just and appropriate and as provided by law;

8. That Plaintiff be awarded punitive damages of $1,000,000 or such other amount as the jury deems just and appropriate and as provided by law;

9. That Plaintiff be awarded her reasonable attorney's fees for her Counsel;

10. That Plaintiff be awarded her litigation expenses and costs incurred by her or her Counsel;

24

11.    That the Court award Plaintiff prejudgment interest on her claim;

12.    That the Court award Plaintiff post-judgment interest; and

13.    That the Plaintiff be awarded such other relief as is determined to be appropriate.

Wherefore, Plaintiff Lolita Yvette Suggs prays for judgment against Defendants GUEST HOUSE AT GRACELAND LLC d/b/a The Guest House at Graceland, LLC and further d/b/a Elvis Presley Enterprises, ELVIS PRESLEY ENTERPRISES 1 INC. d/b/a Elvis Presley Enterprises, ELVIS PRESLEY ENTERPRISES, LLC d/b/a Elvis Presley Enterprises and GRACELAND HOLDINGS LLC d/b/a Graceland Holdings, LLC and demands a jury to try all issues triable by a jury.

Respectfully Submitted,


 s/ John W. Simmons
John W. Simmons (Tenn. Bar No. 012248)
Simmons Law Firm, PLLC
8295 Tournament Drive Ste. 150
Memphis, TN 38125
Telephone: 901-496-8415
FAX: 901-779-4840
Email: jwadesimm850@outlook.com


s/ Beth Brooks_with permission JWS
Beth Brooks (Tenn. Bar No. 9139)
Brooks Law Firm
2299 Union Ave.
Memphis, TN 38104
901-324-5000
beth.brooks@mbbrooks.com


*Counsel for Plaintiff  Lolita Yvette Suggs*

25